[No. 52036–4. En Banc. July 3, 1986.]

THE STATE OF WASHINGTON, *Respondent,* v. LUIS M. LAVARIS, *Petitioner.*

*Mark W. Muenster* of *Washington Appellate Defender Association,* for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *Jennifer Eychaner, Senior Deputy,* for respondent.

PEARSON, J.—Petitioner, Luis Lavaris, was convicted of first degree murder while armed with a deadly weapon. His conviction was affirmed by the Court of Appeals, but was reversed and remanded by this court. Lavaris was retried and again convicted of first degree murder. The Court of Appeals again affirmed his conviction. Lavaris now contends the State improperly called a witness for the *primary purpose* of impeaching him with a prior inconsistent statement, when that statement inculpated Lavaris and was otherwise inadmissible against him as hearsay. We affirm the conviction, but on different grounds than those enunciated by the Court of Appeals.

On July 9, 1980, the body of Jesus Perez was found in a broom closet in an apartment building in Seattle. He had been stabbed approximately 22 times in the neck, chest, shoulders and side. Subsequently, Luis Lavaris and Francisco Castro were charged by amended information with first degree murder, committed while armed with a deadly weapon. They were tried separately and both were convicted as charged. Castro's conviction was affirmed in *State v. Castro,* 32 Wn. App. 559, 648 P.2d 485, *review denied,* 98 Wn.2d 1007 (1982). Lavaris' conviction was affirmed in *State v. Lavaris,* 32 Wn. App. 769, 649 P.2d 849 (1982), but was reversed and remanded in *State v. Lavaris,* 99 Wn.2d 851, 664 P.2d 1234 (1983). This court held that the defend-

ant's full confession to premeditated and felony murder was taken in violation of *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966), and remanded the cause for retrial without the confession.

Lavaris was retried in October 1983. The State's key witness, Betty Nichols, testified that Lavaris and Castro had discussed robbing Perez on the night before Perez was killed. She also stated she had seen Lavaris and Castro standing over Perez' body the next morning; Lavaris had been searching Perez' pockets.

Prior to Lavaris' second trial, defense counsel learned that the State intended to call Castro as a witness. Both the prosecutor and defense counsel were aware that Castro would not incriminate Lavaris in the Perez killing. The prosecutor nevertheless wanted to call Castro as a witness because his testimony was relevant to the testimony of the State's key witness, Betty Nichols, and because Castro had made a prior statement to police detectives implicating Lavaris in the Perez killing.

At trial, defense counsel objected to the prosecution's questioning of Castro on the basis that it was merely an attempt to bring before the jury the detectives' otherwise inadmissible statement of what Castro had allegedly said to them at the state penitentiary at Walla Walla. The statement was neither made under oath nor signed by Castro; the detectives kept only informal notes of Castro's responses. The trial court ruled that the State could call Castro as a witness, and that his prior inconsistent statement could be admitted through Detective Gruber's testimony.

Castro testified once in the absence of the jury and once in its presence that he had been at Nichols' apartment the night of July 8, but that he did not remember seeing either Perez or Lavaris at the apartment. He then denied being present when anyone was killed and denied being the killer. Castro further denied telling Detective Gruber that he saw Lavaris kill Perez and that he was surprised Nichols slept through the killing.

Over defense counsel's objection, Detective Gruber then testified that Castro had told him that Lavaris, Perez and Castro spent the night at Nichols' apartment, that Lavaris killed Perez, and that he was surprised Nichols slept through the killing. The trial court, prior to Detective Gruber's testimony, admonished the jury that it could not consider Detective Gruber's testimony as proof that Lavaris killed Perez. The court stated:

It appears that certain statements which allegedly were made by the witness, Mr. Castro, are about to be introduced into evidence. I would strongly advise you that any prior statements made to Detective Gruber by the witness, Francisco Castro, if you find such prior statements were in fact made, are not to be considered by you as proof of the matters recited in such statements, but are admitted into evidence solely for the purpose of assisting you in evaluating the credibility of Mr. Castro as a witness in this trial.

Verbatim Report of Proceedings, at 294.

The defense presented no evidence, and Lavaris was again convicted of first degree murder while armed with a deadly weapon. This conviction was affirmed by the Court of Appeals in *State v. Lavaris*, 41 Wn. App. 856, 707 P.2d 134 (1985). The court found no error in the admission of Castro's testimony or prior inconsistent statement.

Lavaris argues the State improperly called Castro as a witness, knowing that he would lie and thus enabled the State to introduce, for impeachment purposes, Detective Gruber's damaging testimony of Castro's statement that Lavaris killed Perez. Castro's out-of-court statement to Detective Gruber was not made under oath, and therefore could not have been admitted under ER 801(d)(1)(i) to prove that Lavaris killed Perez. *See State v. Smith*, 97 Wn.2d 856, 651 P.2d 207 (1982).

The judge instructed the jury not to use Detective Gruber's testimony for determining the defendant's guilt or innocence, but instead to use such testimony in evaluating Castro's credibility. Lavaris contends the State knew the jury would be unable to make such a fine distinction, and

would thus treat the out–of–court statement as substantive evidence. In essence, the defendant's position is that the State, regardless of jury admonitions, could not circumvent the hearsay rule by calling a witness for the primary purpose of impeaching him with a prior inconsistent statement.

The admissibility of evidence offered to impeach the credibility of a witness is governed by ER 607, which provides that "[t]he credibility of a witness may be attacked by any party, including the party calling him." This rule reverses the traditional common law rule prohibiting the impeachment of one's own witness. Prior to the adoption of ER 607 and Fed. R. Evid. 607, which is identical to the Washington rule, a party could not impeach its own witness with a prior inconsistent statement unless the party was both surprised and prejudiced by the witness' testimony. *See, e.g., United States v. Morlang,* 531 F.2d 183, 190 (4th Cir. 1975); *State v. Thomas,* 1 Wn.2d 298, 95 P.2d 1036 (1939). Both the federal and state rules have eliminated the requirements of surprise and prejudice and allow a witness' credibility to be attacked by any party, including the party calling him. Fed. R. Evid. 607; ER 607.

■ The federal rule permits a prior inconsistent statement of a witness to be admitted to attack his credibility, even if the statement tends to directly inculpate the defendant. However, "'the prosecutor may not use such a statement under the guise of impeachment for the *primary* purpose of placing before the jury substantive evidence which is not otherwise admissible.'" *United States v. Hogan,* 763 F.2d 697, 702 (5th Cir. 1985) (quoting *United States v. Miller,* 664 F.2d 94, 97 (5th Cir. 1981), *cert. denied,* 459 U.S. 854 (1982)). In *United States v. Webster,* 734 F.2d 1191, 1192 (7th Cir. 1984), the court articulated the rationale behind this well established rule:

> [I]t would be an abuse of the rule [Fed. R. Evid. 607], in a criminal case, for the prosecution to call a witness that it knew would not give it useful evidence, just so it could introduce hearsay evidence against the defendant in the hope that the jury would miss the subtle distinction

between impeachment and substantive evidence—or, if it didn't miss it, would ignore it. The purpose would not be to impeach the witness but to put in hearsay as substantive evidence against the defendant, which Rule 607 does not contemplate or authorize. . . .

Every circuit to consider this question has ruled similarly. *See, e.g., United States v. Webster, supra; United States v. Fay,* 668 F.2d 375, 379 (8th Cir. 1981); *United States v. DeLillo,* 620 F.2d 939, 946 (2d Cir.), *cert. denied,* 449 U.S. 835 (1980); *United States v. Morlang, supra* at 190; *United States v. Coppola,* 479 F.2d 1153, 1156–58 (10th Cir. 1973); *United States v. Michener,* 152 F.2d 880, 883 n.3 (3d Cir. 1945); *Kuhn v. United States,* 24 F.2d 910, 913 (9th Cir.), *cert. denied,* 278 U.S. 605 (1928). In Washington, the Court of Appeals has likewise agreed with the federal case law cited above. In *State v. Barber,* 38 Wn. App. 758, 689 P.2d 1099 (1984), *review denied,* 103 Wn.2d 1013 (1985), the court stated:

Although the State may impeach its own witness, it may not call a witness for the primary purpose of eliciting testimony in order to impeach the witness with testimony that would be otherwise inadmissible. *United States v. Miller,* 664 F.2d 94, 97 (5th Cir. 1981); *United States v. DeLillo,* 620 F.2d 939, 946 (2d Cir.), *cert. denied,* 449 U.S. 835 (1980).

*Barber,* at 770–71.

In the present case, another panel of the Court of Appeals held that the prosecution had not acted improperly in impeaching its own witness. The court cited neither its earlier opinion in *Barber* nor any of the federal cases cited above. The court instead relied primarily on a section of Karl Tegland's treatise on evidence to support its conclusion. *See* 5 K. Tegland, Wash. Prac. § 229 (2d ed. 1982). Interestingly, Tegland's own conclusion, which is only that the law on this point is "unsettled", does not appear to be supported by the authorities he cites. For example, *United States v. DeLillo, supra,* does not hold, as Tegland seems to suggest, that a party may call a witness for the sole purpose of impeaching him. *DeLillo* seems instead to hold

that, although a party may intend from the outset to impeach a particular witness, it cannot call that witness for the primary purpose of impeaching him with otherwise inadmissible testimony. *See United States v. DeLillo, supra* at 946–47. The court there emphasized that the witness in question gave "corroborating testimony . . . essential in many areas of the government's case", and was therefore not called "with the primary aim of getting to the jury a statement impeaching him." *DeLillo,* at 946.

The Court of Appeals further cited *United States v. MacDonald,* 688 F.2d 224, 233–34 (4th Cir. 1982), *cert. denied,* 459 U.S. 1103 (1983) to support its conclusion. The court's reliance on *MacDonald* is confusing. The Circuit Court there held only that the trial court had not abused its discretion by precluding the defendant from impeaching a defense witness; *MacDonald* says nothing about whether a witness may be called solely for the purpose of impeaching him.

The Court of Appeals opinion in the present case conflicts with its earlier decision in *State v. Barber, supra.* Because *Barber* is more consistent with federal case law construing parallel federal rules, we agree with the analysis adopted in *Barber* and find the federal case law persuasive in the present case. This court now must determine whether the State's impeachment of Castro by prior inconsistent statements was employed as a mere subterfuge to place before the jury evidence not otherwise admissible.

Castro's testimony was essential in many areas of the State's case. Castro was integrally involved in the events leading up to the victim's death and was, in fact, a participant in the murder. This in and of itself was relevant to the issues before the jury and entitled the jury to hear Castro's version of the events. Additionally, Castro's testimony corroborated the testimony of Nichols concerning the circumstances (dates, times and places) leading up to the murder. He corroborated Nichols' testimony in other respects, placing himself at the scene of the crime the night before the murder. His testimony only began to diverge from Nichols'

testimony when he testified concerning the homicide and the events which incriminated himself and Lavaris. We conclude the State did not call Castro for the primary purpose of eliciting his testimony in order to impeach him with testimony that would have been otherwise inadmissible. We hold the trial court did not err in admitting the impeachment testimony of Francisco Castro.

The Court of Appeals is affirmed.

DOLLIVER, C.J., UTTER, DORE, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., and JAMES, J. Pro Tem., concur.