FILED
COURT OF APPEALS
DIVISION II

2014 FEB 25 AM 9: 46

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 41632-8-II |
| Respondent, | |
| v. | |
| JAKE CHRISTOPHER COHEN, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, C.J. — Jake Cohen appeals his jury trial convictions for second degree assault, unlawful imprisonment, and attempted witness tampering. Cohen argues that (1) the prosecutor committed misconduct by calling the recanting victim to testify and (2) his counsel was ineffective for failing to object to the victim's testimony and other witnesses' hearsay testimony. Because the prosecutor did not commit misconduct and Cohen's counsel was not ineffective, we affirm.

## FACTS

One evening, Samantha Rivera met Jake Cohen, a man she was dating, at a bar near Rivera's apartment in Bremerton. In the early morning hours of the next day, someone attacked and attempted to strangle Rivera in her apartment. After the attack, the clothes Rivera had been wearing were torn; her knees were scraped; and she had bruises on her neck, back, arms, and legs. According to two police officers and two nurses, Rivera made statements inculpating Cohen.

Cohen was arrested and initially charged with two counts: (1) second degree assault with a domestic violence enhancement and (2) unlawful imprisonment with a domestic violence enhancement. During a series of phone calls recorded while Cohen was in jail, Cohen suggested to his family and friends[1] that he would get out of jail if Rivera recanted, but Cohen did not explicitly direct anyone to contact Rivera. By amended information, the State additionally charged Cohen with attempted witness tampering.

Later, Rivera denied Cohen's involvement in the attack. While the charges were pending, Rivera contacted Detective Jason Vertefeuille, who had previously interviewed her. Rivera said she wanted to drop the charges and stated that she had filed two false police reports. Rivera also attended a pretrial hearing, at which she told the judge, "This has never happened before. He's never hurt me before." 2 Verbatim Report of Proceedings (VRP) at 104. Rivera told a defense investigator that she had been strangled by a black man wearing a yellow shirt.

By the time of trial, the prosecutor anticipated that Rivera's testimony would not incriminate Cohen. Nonetheless, the prosecutor planned to call Rivera to testify and, if necessary, also call the two police officers and two nurses to contradict her testimony. The State requested a pretrial ruling that the nurses' testimony would be admissible under the medical treatment exception to the hearsay rule, but the trial court reserved its ruling. During trial, Cohen's counsel never objected on hearsay grounds to the police officers' or nurses' testimony.

---

[1] One friend Cohen phoned, a young woman called "Alabama," was possibly Rivera. Cohen testified that Alabama and Rivera were two different young women he was simultaneously dating, each of whom had a small child, the same kind of job, and all the same friends. Rivera denied knowing of anyone named Alabama.

At trial, the State called Rivera to testify. On direct examination, Rivera testified that she drank excessively and did not remember leaving the bar. She next remembered being in her bed and throwing a candleholder at a man in a yellow shirt who was leaving her bedroom. She "[h]ardly" remembered coming out of her bedroom and "making eye contact for a second" with a man she thought was Cohen. 2 VRP at 88-89. She remembered being at her neighbor's door and begging her to call the police while two men stood outside Rivera's front door. She also remembered seeing a police officer at the scene and later being treated at a hospital.

Rivera said that when she left the hospital, her condition was "[s]till drunk. Unbelievably drunk. Fragile, frightened, frantic, hysterical." 2 VRP at 94. When she ultimately returned home, she found her apartment "trashed." 2 VRP at 88, 97.

Rivera testified that she did not remember telling a police officer at the scene or any nurses that Cohen strangled her. She also did not remember telling Detective Vertefeuille several days after the incident that Cohen had strangled her. But, after describing her injuries, she conceded on the stand that somebody strangled her. The State did not ask Rivera who the strangler was.

On cross-examination, Rivera said she was sure that Cohen was not the person at whom she threw the candleholder because they wore different clothes. She further testified that she did not remember being strangled, but she believed she had been strangled because that would explain her injuries. She testified that she could not remember details of her conversations with the police officers or nurses because, in addition to being drunk on the night of the attack, she was drunk and stoned when Detective Vertefeuille interviewed her several days later.

3

The State then elicited testimony from Officer Daniel Fatt, Detective Vertefeuille, and nurse Christine Ward. Each testified that Rivera said Cohen had strangled her. Another nurse testified that Rivera said, "I hate him." 2 VRP at 168. None of these witnesses observed Rivera as being so intoxicated that she was incoherent or in need of medical attention.

Officer Fatt, who was called to the scene, described Rivera as "quite hysterical" from the stress of the attack. 2 VRP at 125. He also mentioned that two unnamed men, who had called 911, told him that Rivera had been dragged out of the house at one point.

Ward testified that Rivera's "heart rate was racing a little bit" from stress. 2 VRP at 177. In addition, hospital staff treating possible domestic violence victims inquire as to the identity of the attacker, so they can prevent the attacker from using family privileges to visit the victim.

Cohen testified in his own defense that he left the bar alone because he was disgusted at Rivera's drunken behavior. He walked to Rivera's apartment, collected some belongings he had there, drove a short distance away, and slept from about 12:30 to 3:30 AM inside his truck. Around 4:00 AM, he drove back to Rivera's apartment to look for his phone; although he had a key, he found the front door unlocked.

Cohen further testified that the apartment was in disarray but Rivera was in bed asleep. Rivera then woke up, refused to let Cohen leave, and began "[k]icking, punching, clawing, biting, [and] scratching" him. 4 VRP at 238. Without laying his hands on Rivera, Cohen successfully returned to his truck within two minutes. Rivera followed him outside and then attacked another, unknown man who "kind of threw her down." 4 VRP at 240. Rivera knocked on her neighbor's door, and Cohen drove away after the neighbor opened the door.

In closing, Cohen's counsel urged the jury to acquit Cohen because "the only two people with firsthand knowledge of this incident . . . have both said that Mr. Cohen did not commit this crime." 5 VRP at 320. Cohen's counsel further argued that the jury should not credit the police officers' and nurses' testimony of what Rivera told them because Rivera admitted she was "extremely intoxicated" when she talked to them. 5 VRP at 321. Nonetheless, the jury found Cohen guilty of all three counts.

Cohen appeals.

## ANALYSIS

Cohen asserts that the State elicited inadmissible testimony from Rivera and other witnesses. He then argues that (1) the prosecutor committed misconduct by calling Rivera to testify and (2) Cohen's counsel was ineffective for failing to object to Rivera's testimony and failing to object to hearsay testimony from other witnesses. We disagree.

A.    *Prosecutorial Misconduct*

Prosecutors are quasi-judicial officers charged with the duty of ensuring that defendants receive a fair trial. *State v. Boehning*, 127 Wn. App. 511, 518, 111 P.3d 899 (2005). Prosecutorial misconduct violates that duty and can constitute reversible error. *Boehning*, 127 Wn. App. at 518. We must reverse a conviction when the defendant meets his burden of establishing that the prosecutor acted improperly and the prosecutor's improper act prejudiced the defendant. *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012).

Cohen claims that the prosecutor committed misconduct because (1) the prosecutor knowingly elicited perjured testimony from Rivera and (2) the prosecutor's primary purpose in calling Rivera was to impeach her with testimony from other witnesses whose testimony would otherwise have been inadmissible. These claims lack merit because Cohen fails to show that the prosecutor acted improperly.

1. *The Prosecutor Did Not Knowingly Elicit Perjured Testimony*

Cohen first claims that the prosecutor knowingly elicited perjured testimony from Rivera. But, as the State suggests, Cohen's briefing on this issue falls short of reasoned argument because he fails either (1) to identify any perjured testimony in the record or (2) to explain how the prosecutor could have committed misconduct by eliciting testimony that Cohen urged the jury to believe. "Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration." *Holland v. City of Tacoma*, 90 Wn. App. 533, 538, 954 P.2d 290 (1998).

Moreover, the record contradicts Cohen's claim that the prosecutor knowingly presented false testimony. At a pretrial hearing, the prosecutor expected Rivera's trial testimony to "contradict the statements that she made to law enforcement and contradict the statements she made to medical personnel." 1 VRP at 32. Later, in his opening statement, the prosecutor told the jury, "Ms. Rivera is going to be the first witness that you hear from. We will see what her testimony ultimately is." 2 VRP at 69. The record does not show that the prosecutor *knew* what

6

Rivera would say or that Rivera's testimony was false.[2] Thus Cohen fails to meet his burden of showing that the prosecutor acted improperly by knowingly presenting false testimony.[3]

2. *The Prosecutor Did Not Call Rivera Primarily for an Improper Purpose*

Citing *State v. Lavaris*, 106 Wn.2d 340, 721 P.2d 515 (1986), Cohen next asserts the prosecutor called Rivera to testify primarily for the purpose of eliciting testimony that could later be contradicted by otherwise inadmissible hearsay testimony elicited from the State's other witnesses. But *Lavaris* refutes Cohen's assertion that the prosecutor's improper primary purpose "cannot be disputed." Br. of Appellant at 13.

ER 607 states, "The credibility of a witness may be attacked by any party, including the party calling the witness." But the State may not call a witness for the *primary* purpose of impeaching the witness with testimony that would otherwise be inadmissible against the

---

[2] For example, it appears from the following exchange that the prosecutor did not know Rivera would testify that she had been strangled at all:

> Q. Tell me about the injuries to your neck. . . . Did you have discomfort for a period of time?
> A. It was hard to swallow. It was hard to talk a little bit. I had a roughness to my voice. It was very obvious that I was choked.
> Q. So you would agree somebody choked you? You would at least agree with me on that—
> A. Yes.
> Q. —somebody choked you?
> A. Yes.

2 VRP at 95-96.

[3] Citing *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), Cohen asserts that, under the confrontation clause, no witnesses could have testified to things Rivera told them unless Cohen had an opportunity to examine Rivera. But we do not consider this assertion because Cohen does not argue that his confrontation clause rights were violated.

defendant.[4] *Lavaris*, 106 Wn.2d at 345-46 (quoting *State v. Barber*, 38 Wn. App. 758, 770-71, 689 P.2d 1099 (1984)); *see* 5A KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 607.3, at 380 (5th ed. 2007).

*Lavaris* involved a murder trial where the State called (1) the defendant's accomplice, who testified to events leading up to the murder but did not incriminate the defendant,[5] and (2) a detective who impeached the accomplice by describing the accomplice's confession, which incriminated both the defendant and the accomplice. 106 Wn.2d at 342-43, 346. Because the accomplice testified to events leading up to the murder, our Supreme Court held that the State *did not* call the accomplice for the primary purpose of eliciting the detective's otherwise inadmissible testimony. 106 Wn.2d at 346-47.

Similarly, the State elicited Rivera's testimony of her version of the events leading up to and following the attack. Thus, the prosecutor did not call Rivera for the primary purpose of impeaching Rivera with other witnesses' otherwise inadmissible hearsay testimony. *See Lavaris*, 106 Wn.2d at 346-47. Because the prosecutor did not act improperly, Cohen's argument fails.

---

[4] In *Lavaris*, our Supreme Court endorsed a federal court's rationale:

> "[I]t would be an abuse of the rule for the prosecution to call a witness that it knew would not give it useful evidence, just so it could introduce hearsay evidence against the defendant in the hope that the jury would miss the subtle distinction between impeachment and substantive evidence. . . ."

106 Wn.2d at 344-45 (quoting *United States v. Webster*, 734 F.2d 1191, 1192 (7th Cir. 1984) (considering FED. R. EVID. 607) (alteration in original)) (citation omitted). Given this rationale, this limitation guards against improper "abuse" of the rules of evidence.

[5] The accomplice was tried separately and had already been convicted by the time of the defendant's trial. 106 Wn.2d at 341.

B.    *Ineffective Assistance of Counsel*

Cohen next claims that his counsel rendered ineffective assistance by failing to object when the State called Rivera to testify or when the other witnesses gave possible hearsay testimony.[6]  Again, we disagree.

Whether a defendant received ineffective assistance of counsel is a mixed question of law and fact, which we review de novo.  *In re Pers. Restraint of Fleming*, 142 Wn.2d 853, 865, 16 P.3d 610 (2001).  When claiming ineffective assistance of counsel, a defendant bears the burden of satisfying the two-pronged test announced in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987).  First, the defendant must show that counsel's performance was deficient.  *Strickland*, 466 U.S. at 687.  Second, the defendant must show that the deficient performance prejudiced the defendant's case.  *Strickland*, 466 U.S. at 687.  A failure to satisfy either prong is fatal to an ineffective assistance of counsel claim.  *Strickland*, 466 U.S. at 700.

With respect to counsel's failure to object to hearsay testimony of the police and nurse witnesses, Cohen's claim fails because he cannot carry his burden to satisfy *Strickland*'s

---

[6] The other witnesses' testimony about Rivera's out-of-court statements was hearsay if it was offered to prove the truth of the matters asserted; but it was not hearsay if it was offered for another purpose such as impeachment. *See* ER 801(c).  Because Cohen's counsel did not object, the trial court did not identify the purpose for which the testimony could be offered, and it is not clear whether the testimony truly was hearsay.  Further, even hearsay testimony is admissible if an exception to the hearsay rule applies. ER 802.  Cohen concedes that at least *some* testimony here would fall within two hearsay exceptions: the excited utterance exception (ER 803(a)(2)) and the medical treatment exception (ER 803(a)(4)).  But we do not consider whether any of the trial testimony actually was inadmissible hearsay because Cohen fails to show that his counsel's performance was deficient.

deficiency prong.[7] In reviewing claims of ineffective assistance, this court begins with a strong presumption of counsel's effectiveness. *Strickland*, 466 U.S. at 689; *Thomas*, 109 Wn.2d at 226. Counsel's performance is deficient if it falls below an objective standard of reasonableness under all the circumstances. *Thomas*, 109 Wn.2d at 226. But counsel's performance is not deficient if it can be characterized as legitimate trial strategy or tactics. *State v. Kyllo*, 166 Wn.2d 856, 863, 215 P.3d 177 (2009). It is a legitimate trial tactic to withhold an objection to avoid emphasizing inadmissible evidence. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 714, 101 P.3d 1 (2004).

Cohen's trial strategy was to win a swearing contest. In his opening statement, Cohen's counsel framed the case as an unusual he said, she said dispute in which Rivera disavowed her initial statements that Cohen had attacked her. Cohen's counsel further asserted that, due to Rivera's intoxication and changes in her story, the hearsay accounts from other witnesses were not credible enough to find Cohen guilty beyond a reasonable doubt.

Given this strategy, Cohen's counsel had legitimate tactical reasons for not objecting to the State calling Rivera to testify. Given Officer Fatt's testimony that Rivera appeared "quite hysterical" and "very panicky," he would likely have been permitted under the excited utterance

---

[7] Cohen also claims that his counsel failed to object when the prosecutor "made himself an impeachment witness" by referencing, during his opening argument, statements that Rivera made to him before the trial began. Br. of Appellant at 16. This claim misrepresents the record. The prosecutor merely previewed what he expected the evidence to show. Then, during the State's questioning of Rivera, the following exchange occurred:

> Q. You would agree that you've contacted the prosecutor trying to get these charges dropped; is that right?
> A. Yes.

2 VRP at 121. Contrary to Cohen's claim, the prosecutor did not inject his own unsworn testimony into the record.

exception to testify that Rivera inculpated Cohen at the scene. 2 VRP at 125, 132; *see* ER 803(a)(2); *State v. Magers*, 164 Wn.2d 174, 187-88, 189 P.3d 126 (2008). And as Cohen concedes, nurse Ward also could have testified under the medical treatment exception that Cohen was barred from visiting Rivera because she was being treated as a domestic violence victim who said that Cohen strangled her. *See* ER 803(a)(4); *State v. Sims*, 77 Wn. App. 236, 239, 890 P.2d 521 (1995). By not objecting to Rivera's testimony, Cohen's counsel ensured that the jury would hear a more favorable version directly from Rivera. Therefore the State's decision to call Rivera to testify promoted Cohen's trial strategy.

Similarly, hearsay testimony from the State's other witnesses could also have promoted Cohen's trial strategy. Because these other witnesses lacked firsthand knowledge of the disputed events, discrepancies between their versions and Rivera's own testimony could suggest that Rivera was a serial fabricator who misled the other witnesses. Under the circumstances of this case, withholding evidentiary objections could be characterized as legitimate trial strategy or tactics. *See Kyllo*, 166 Wn.2d at 863.[8]

---

[8] As Cohen correctly asserts, Officer Fatt testified that two unnamed men told him that Cohen dragged Rivera outside. Assuming that this statement is inadmissible hearsay, withholding an objection was not deficient because it would avoid emphasizing inadmissible evidence. *See Davis*, 152 Wn.2d at 714. Both Cohen and Rivera testified that they *moved* outside, without any reference to dragging.

No. 41632-8-II

Accordingly, counsel's performance did not fall below an objective standard of reasonableness. *See Thomas*, 109 Wn.2d at 226. Therefore counsel's performance was not deficient, and Cohen's argument fails.

Affirmed.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, C.J.

We concur:

Hunt, J.

Penoyar, J.