# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 74160-8-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| RICHARD PETER STAVRAKIS, | ) | |
| Appellant. | ) | FILED: January 19, 2016 |
| | ) | |

APPELWICK, J. — Richard Stavrakis was convicted of child molestation in the first degree. He argues that he was denied a fair trial, because the trial court excluded evidence leading up to the victim's disclosure of abuse and evidence of a witness's prior inconsistent statements. We affirm.

## FACTS

In fall of 2006, the Stavrakis family had a barbeque. Richard[1] visited his brother, John, and John's wife, Angela, at their house in Vancouver. John and Richard's mother, Helen, also lived there. John and Angela's two children, A.S. and P.S., were present as well. A.S., Richard's niece, was eight years old at the time.

Richard, A.S., and P.S. wanted to use the hot tub. But, the family had a rule that only two people could use the hot tub at a time. So, A.S. and Richard got in the hot tub first.

When A.S. got in the hot tub, Richard told her to get on his lap, and she obeyed. She sat in the water with her back to his chest. Richard then put his hand

---

[1] We refer to the members of the Stavrakis family by their first names for clarity. No disrespect is intended.

inside A.S.'s swimsuit bottom, touching her inside her vagina. This continued for some time. Richard stopped when P.S. came outside to demand his turn in the hot tub.

That day, A.S. revealed to her mother, Angela, that Richard had touched her. Angela shared this disclosure with John. John and Angela confronted Richard about it. Richard told them that he did not touch A.S., although his hand may have slipped as he lifted her over his lap. After this event, A.S. was not allowed to be alone with Richard.

In November 2010, when A.S. was twelve, she got in trouble at school. She was found in possession of alcohol, marijuana, tobacco, and stolen property. The police became involved. A.S. was not charged with any crimes, but she completed a diversion program.

As a result of this event, A.S. was expelled and began attending a new school. Her new school offered a peer support group for students who had been using drugs and alcohol. A.S. began attending sessions of this peer support group. During a session, another girl revealed that she had been abused. The counselor noticed that A.S. was crying while listening to the other student's story, and asked A.S. if something had happened to her. A.S. disclosed the abuse to the counselor. It was the first time that A.S. had told anyone outside of her family about what happened in the hot tub. As a mandatory reporter, the counselor was required to contact Child Protective Services and the police to inform them of A.S.'s disclosure.

The State charged Richard with rape of a child in the first degree, or in the alternative, child molestation in the first degree.

After a jury trial, Richard was convicted of child molestation in the first degree. He appeals.

## DISCUSSION

Richard contends that two of the trial court's evidentiary rulings violated his right to a fair trial. He argues that the trial court erred by excluding evidence of A.S.'s expulsion from school and her participation in a diversion program. And, he asserts that the trial court erred in excluding evidence that John made inconsistent statements during pretrial defense interviews.

I.  Evidence of A.S.'s Expulsion and Participation in a Diversion Program

Richard contends that the trial court denied him a fair trial by excluding evidence that A.S. was attending group therapy as a result of her criminal activities and expulsion from school. He asserts that this evidence was critical to attacking A.S.'s credibility, because it provided her a motive to fabricate a claim of abuse.

Before trial, the State moved to exclude evidence that A.S. completed a diversion program with the Clark County Juvenile Department on charges of possession of stolen property, possession of marijuana, minor in possession, and minor in possession of tobacco. It moved to exclude evidence that A.S. was expelled from school because of this event. And, it moved to exclude evidence that A.S. was participating in group therapy because of or as a punishment for this event. Defense counsel opposed this motion, arguing that the evidence must come in during his opening statement and his cross-examination of A.S., because

otherwise the jury would not hear the full story. Defense counsel repeated on multiple occasions, "It would be a failure of justice for all the evidence not to come out." He elaborated, "Every story has a beginning, a middle, and an end, alright? You can't just ask this jury to get to the end of the story and say we want a conviction without showing the beginning and how we got there." The trial court concluded that evidence of A.S.'s participation in a diversion program and her expulsion from school was irrelevant, as it dealt only with collateral issues.

The relevancy and admissibility of evidence is a matter within the discretion of the trial court. State v. Aguirre, 168 Wn.2d 350, 361, 229 P.3d 669 (2010). We review only for a manifest abuse of discretion. Id. Abuse exists if the trial court's exercise of discretion is manifestly unreasonable or based upon untenable grounds. State v. Powell, 126 Wn.2d 244, 258, 893 P.2d 615 (1995).

Under the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington State Constitution, defendants have the right to present relevant evidence in their defense. State v. Hudlow, 99 Wn.2d 1, 14-15, 659 P.2d 514 (1983). Evidence is relevant if it tends to make the existence of any consequential fact more or less probable. ER 401. The proponent of the evidence bears the burden of establishing relevance and materiality. State v. Hilton, 164 Wn. App. 81, 99, 261 P.3d 683 (2011).

Richard now contends that he sought to introduce this evidence to show that A.S. had a motive to fabricate the abuse. But, defense counsel never explained this theory at trial. The closest he came to providing this theory at trial was his statement, "[I]n other words, your Honor, she goes from being in trouble

to being a victim, immediately." But, A.S. would immediately be viewed as the victim whether she made a truthful disclosure or a fabricated disclosure. Whether or not A.S. disclosed so that she would be viewed as a victim is merely speculation. And, that speculation is not more probative of the disclosure of abuse being untruthful.

The trial court has discretion to exclude impeachment evidence when the evidence sought is vague and speculative. State v. Jones, 67 Wn.2d 506, 512-13, 408 P.2d 247 (1965). Such evidence is collateral to the principal issues and consequently irrelevant. See id. The trial court did not err in concluding that the evidence was collateral. Therefore, we hold that the trial court did not abuse its discretion by excluding evidence on this subject.

II.    John's Inconsistent Statements

Richard also argues that the trial court denied him a fair trial by excluding evidence that John previously stated that Richard had raped A.S. multiple times.

John was interviewed by the defense after the investigation had begun. During that interview, he stated that his wife told him that A.S. had revealed that Richard had raped her multiple times in their house when no one else was around. Shortly after the interview, John spoke with his wife and realized that he had misunderstood what she had told him. The State intended to call John as a witness. But, it sought to exclude the evidence regarding John's misunderstanding of the details of the abuse, because it was a collateral issue. Defense counsel objected to the State's motion to exclude this evidence, arguing that it was crucial to John's credibility as a witness. The trial court decided that it would permit the

defense to impeach John with his earlier statements. As a result, the State decided not to call John as a witness.

Subsequently, defense counsel decided to call John as a witness. The State argued that the defense should not be permitted to bring out John's inconsistent statements, because it would be calling the witness solely to impeach him. The court found that the defense's primary purpose of calling John was to impeach him on a collateral issue. So, while John could testify as to facts concerning the day of the abuse, he could not be impeached with his prior statements.

A party may impeach its own witness. However, a party may not call a witness for the primary purpose of impeaching a witness with testimony that would otherwise be inadmissible. State v. Lavaris, 106 Wn.2d 340, 345-46, 721 P.2d 515 (1986). Impeachment evidence on a collateral matter is inadmissible. Aguirre, 168 Wn.2d at 362.

Here, the facts surrounding the defense's decision to call John as a witness demonstrate that the primary purpose of doing so was to impeach John with his prior inconsistent statements. Although Richard now claims that he sought to elicit John's prior statements to impeach A.S.'s claims, at trial, defense counsel clearly stated that these statements were crucial to John's credibility.

Moreover, the first time the defense showed any intention of calling John as a witness was after the State decided not to call him. The defense claimed that John could provide additional facts about the day in question. But, John did not have knowledge of any additional facts not already in evidence. He was going in

6

and out of the house when A.S. and Richard were in the hot tub. A.S. did not directly disclose the abuse to John. He knew of what happened only because Angela told him. Angela had already testified.

Defense counsel sought to call John simply to impeach him on a collateral matter. Therefore, we hold that the trial court did not abuse its discretion by limiting John's testimony to his knowledge of the facts of A.S.'s abuse.

Richard also filed a pro se statement of additional grounds in which he contends the trial court violated his constitutional rights by excluding evidence about A.S.'s expulsion and criminal activity. We need not address this argument, as it is adequately addressed in his appellate counsel's brief. See State v. Gomez, 152 Wn. App. 751, 754, 217 P.3d 391 (2009) (refusing to address defendant's statement of additional grounds because it raised no new issues).

We affirm.

WE CONCUR: