[No. 53758–5. En Banc. January 14, 1988.]

THE STATE OF WASHINGTON, *Respondent,* v. LOREN W. HANCOCK, *Petitioner.*

*Mark W. Muenster* of *Washington Appellate Defender Association,* for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *Dean Lum, Deputy,* for respondent.

UTTER, J.—Loren Hancock appeals his conviction of one count of indecent liberties, one count of first degree incest, and one count of third degree statutory rape. Hancock

argues that the trial court erred in permitting the prosecutor to impeach its own witness and in admitting into evidence a victim's testimony that Hancock owned a gun. We affirm.

Hancock was charged with committing indecent liberties on his nephew, "B", and incest and statutory rape on his son, "L". At the time of the alleged offenses, B was between 3 and 7 years of age and L was between 14 and 16. At the time of trial, B was 8 and L was 16.

At trial, B's mother testified that B had told her that he had been sexually molested by Hancock. B's testimony was generally consistent with that of his mother. L testified about two incidents of sexual abuse by Hancock. When asked why he did not report these incidents earlier, L replied that he was afraid of what his father might do. The prosecutor then asked L if Hancock owned a gun, and L said yes.

Petitioner's wife, Roberta Hancock, who is also L's stepmother, was initially called to testify by the prosecution. On direct examination, the prosecutor asked whether she had ever suspected anything improper between her husband and L, whether her husband had ever told her of any improper conduct, and whether she was afraid of him or had ever been threatened by him. When she replied negatively to these questions, the prosecutor asked whether she had made contrary statements to the investigating officer, Detective Ostrander, at the time of Hancock's arrest. Roberta Hancock denied making any such statements and claimed not to remember discussing the matter with Ostrander or any other police officer. During cross examination by defense counsel and later as a direct witness for the defense, Roberta Hancock gave much testimony helpful to her husband's defense.

After Roberta Hancock's direct examination by the defense, Detective Ostrander was called by the prosecution and testified about certain out–of–court statements Roberta Hancock made to him. According to Ostrander, shortly after Hancock's arrest, Mrs. Hancock told him that

she had suspected that something was going on between her husband and B, that Hancock had told her what he had done to L, and that she was afraid of him.

Hancock testified in his own defense and denied all charges. He explained that on one occasion, when B was sleeping at the Hancocks' home, he had felt the front of B's shorts to see whether he had wet himself. He suggested that B had confused this incident with one involving sexual abuse by another man. Hancock attributed the testimony by B's mother and L to personal animosity.

The jury found Hancock guilty on all counts. The Court of Appeals affirmed, holding that the testimony from Detective Ostrander was admissible under ER 607 to impeach Roberta Hancock's testimony on direct examination. The court also held that the admission of L's testimony regarding Hancock's gun ownership was constitutional error but that the error was harmless. We granted review on the basis of these two evidentiary issues.[1]

I

Hancock asserts that the testimony of Detective Ostrander regarding the statements made to him by Roberta Hancock was inadmissible hearsay. Hancock claims that the prosecutor knew that Roberta Hancock would not testify favorably to the State and that the primary purpose in calling her as a witness was mere subterfuge to admit her prior inconsistent statements under the guise of impeachment.

ER 607 provides that "[t]he credibility of a witness may be attacked by any party, including the party calling him." Prior to the adoption of ER 607, Washington law required that one's own witness could be impeached with evidence of prior inconsistent statements only when the party was both surprised and prejudiced by the witness' testimony. *See State v. Thomas*, 1 Wn.2d 298, 303, 95 P.2d 1036 (1939).

---

[1] A statute of limitations argument was raised in the defendant's amended petition for review but was dropped in oral argument as a result of our recent decision in *State v. Hodgson*, 108 Wn.2d 662, 740 P.2d 848 (1987).

This rule was substantially in accord with then–existing federal practice. *See United States v. Morlang,* 531 F.2d 183, 189 (4th Cir. 1975).

Under ER 607, the previous requirements of surprise and damage do not need to be met before impeaching one's own witness. *See United States v. Palacios,* 556 F.2d 1359 (5th Cir. 1977). Indeed, the rule contains no express limitations on the right to impeach.[2] However, the federal circuit courts have consistently held that the federal equivalent to ER 607 does not allow a prosecutor to call a witness for the primary purpose of later impeaching his testimony with prior inconsistent statements made out of court and which are otherwise inadmissible hearsay. *See United States v. Crouch,* 731 F.2d 621 (9th Cir. 1984); *United States v. Webster,* 734 F.2d 1191 (7th Cir. 1984); *United States v. Fay,* 668 F.2d 375 (8th Cir. 1981); *United States v. DeLillo,* 620 F.2d 939 (2d Cir.), *cert. denied,* 449 U.S. 835 (1980). The underlying concern is that prosecutors may abuse the rule by calling a witness they know will not provide useful evidence for the primary purpose of introducing hearsay evidence against the defendant. This tactic seeks to exploit a jury's difficulty in making the subtle distinction between impeachment and substantive evidence. *Webster,* at 1192. The motivation in such instances is less to impeach the witness than to introduce hearsay as substantive evidence, contrary to ER 802.

This court recently adopted the federal analysis of ER 607 in *State v. Lavaris,* 106 Wn.2d 340, 721 P.2d 515 (1986). In that case we stated that

> Although the State may impeach its own witness, it may not call a witness for the primary purpose of eliciting testimony in order to impeach the witness with testimony that would be otherwise inadmissible.

*Lavaris,* at 345, quoting *State v. Barber,* 38 Wn. App. 758,

---

[2]The rule has been criticized on this ground. *See* Graham, *Employing Inconsistent Statements for Impeachment and as Substantive Evidence: A Critical Review and Proposed Amendments of Federal Rules of Evidence 801(d)(1)(A), 613, and 607,* 75 Mich. L. Rev. 1565, 1610–19 (1977).

770–71, 689 P.2d 1099 (1984), *review denied,* 103 Wn.2d 1013 (1985). In *Lavaris,* this court found no error in the admission of the witness' out–of–court statements since his testimony on direct examination provided important circumstantial evidence of the events leading up to the crime. Thus, it could not be said that in calling the witness the State's "primary purpose" was to introduce inadmissible hearsay evidence. *Lavaris,* at 346–47.

In the present case, the Court of Appeals likewise concluded that in calling Roberta Hancock as a witness the State was not *primarily* motivated by a desire to impeach her testimony with otherwise inadmissible hearsay. The court found that in direct examination the prosecution attempted to elicit testimony on matters that were "probative, proper, and admissible." *State v. Hancock,* 46 Wn. App. 672, 683, 731 P.2d 1133 (1987). Furthermore, the court determined that "[n]othing in the record indicates that there was reason to anticipate that [Roberta] would not testify consistently with her earlier statements [made to Detective Ostrander]." *Hancock,* at 683.[3]

Hancock challenges this conclusion. He emphasizes that the State conceded in its brief to the Court of Appeals that it had "some indication that Mrs. Hancock would not testify favorably." Also, aside from providing some personal information, Roberta Hancock did not testify on direct examination to any matters unrelated to her out–of–court statements to Detective Ostrander. Hancock contends that since Roberta Hancock's testimony brought forth little or no affirmative evidence for the State, calling her as a witness was merely a pretext for introducing the hearsay evidence from Detective Ostrander. Thus, Ostrander's testimony relating the substance of his conversations with

---

[3]On appeal, Hancock argued that the prosecution had notice that Mrs. Hancock's testimony would not be favorable to the State because defense counsel had indicated that he would not invoke the spousal incompetency rule to prevent her from testifying. However, as the Court of Appeals correctly noted, and as the prosecutor advised the trial court, this rule does not apply in cases involving child abuse by either spouse. *Hancock,* at 683 n.12; *see* RCW 5.60.060(1).

Roberta Hancock was inadmissible under recognized limitations to ER 607.

This argument fails to take into consideration the whole of Roberta Hancock's testimony. Had her testimony simply consisted of flat denials of making any statements to police investigators, without offering any affirmative testimony for the defendant, the defense argument on this issue would have greater merit. However, in responding to questions from defense counsel, Roberta Hancock provided affirmative evidence in support of her husband's defense. It was not until after Roberta Hancock so testified that Detective Ostrander was called to testify. In this context, the State was entitled to introduce her prior inconsistent statements to rebut her testimony supporting the defense and to impeach her credibility.

Roberta Hancock was a very logical witness to be called by either the prosecution or the defense, and we note that she was called as a witness by both sides. As the defendant's wife who shared the same home where the alleged incidents occurred, her observations of her husband and his relationship to the two boys could reasonably be expected to be probative of the issues at stake. Furthermore, as found by the Court of Appeals, the State could not have been certain that Roberta Hancock's testimony would change. The State was entitled to expect her to testify under oath no differently from the apparently voluntary statement she gave to the detective.

The testimony of Detective Ostrander was important evidence for the jury to weigh in considering Roberta Hancock's credibility. First, the evidence is strong that she did meet Ostrander at her home and made a statement to him regarding her husband. Although she initially denied ever talking to the police, other portions of her testimony contradict this. For example, while denying that she told the detective that her husband admitted the incidents with L, she testified that she said something *else* to him—that Hancock told her "that if anything came from this, the world would come to an end." Report of Proceedings, at 89.

Later, when asked by defense counsel whether she recognized Ostrander, she replied that it seemed to her that "the person that came there [to the house] had blond hair." Report of Proceedings, at 93. Loren Hancock, the defendant, also testified that police had visited the home shortly after his arrest. Report of Proceedings, at 137.

Second, her alleged statement to Detective Ostrander that she suspected that something improper was going on between Hancock and his nephew, B, and of Hancock's admission of the incidents with L, was essential rebuttal evidence for the State to her testimony in court that she was "shocked" by the arrest and that B's relationship to them had always been a very loving one. Report of Proceedings, at 92, 94. Her out–of–court statement would also appear to undermine her testimony as to Hancock's upstanding character and his excellent reputation for truth and veracity. Report of Proceedings, at 100.

Third, the statement made to Ostrander regarding her fear of Hancock, along with Ostrander's personal observation that she was afraid of him, Report of Proceedings, at 103, directly contradicts her assertion that she had no reason to be afraid of him. Report of Proceedings, at 93, 97. This statement may also suggest a motive for changing her testimony.

The real problem with Detective Ostrander's testimony regarding statements made to him by Roberta Hancock is that the petitioner's alleged admission of sexual misconduct with his son, L, may have been accepted as substantive rather than merely impeaching evidence, contrary to ER 802. However, while we acknowledge the potential difficulty a jury has in distinguishing between impeachment and substantive evidence,[4] we do not con-

---

[4]Even the Court of Appeals appears to have misused this out–of–court statement when it stated that "the overwhelming evidence of Hancock's guilt . . . included . . . Hancock's own admission of improper sexual contact . . ." *Hancock,* at 682. The record is quite clear that Hancock made no such admission and that the only suggestion of such an admission came from Detective Ostrander's testimony regarding what Roberta Hancock told him that the defendant had told her.

clude that the trial judge abused his discretion in allowing Roberta Hancock's out–of–court statement into evidence. Taken as a whole, the statement was admissible under ER 607 to rebut the affirmative testimony Roberta Hancock provided for the defense. Furthermore, if counsel wishes to restrict the jury's use of evidence it must request an appropriate limiting instruction. We note that no such limiting instruction was requested in this case.

The trial court did not err in permitting Detective Ostrander to testify about the substance of the out–of–court statement made to him by Roberta Hancock. Since she did give testimony which affirmatively supported the defense, the subsequent impeachment of her testimony was proper.

## II

Hancock also contends that it was error for the trial court to admit evidence of his gun ownership. He argues that such evidence was irrelevant and unduly prejudicial, and that it impermissibly penalized his constitutionally protected right to bear arms. Hancock further contends that the Court of Appeals erred in holding that admission of this evidence was harmless constitutional error. Because we find that the admission of this evidence was not in error, this portion of the Court of Appeals opinion is reversed.

Due process prohibits the State from drawing adverse inferences from a defendant's exercise of a constitutional right. *Zant v. Stephens*, 462 U.S. 862, 77 L. Ed. 2d 235, 103 S. Ct. 2733 (1983). Since ownership of a gun is a constitutionally protected right, Const. art. 1, § 24, the State cannot use such ownership to draw adverse inferences regarding the defendant's character. *State v. Rupe*, 101 Wn.2d 664, 706–07, 683 P.2d 571 (1984).

At the same time, however, we do not have a per se rule barring the admission of evidence of a defendant's ownership of firearms. The essential inquiry is one of relevance. Where a defendant's ownership of a gun is relevant to an issue at stake in the trial, we recognize no special rule that

would prevent that evidence from being admitted. The problem in *Rupe* was that the prosecutor sought to admit evidence of the defendant's gun collection in the sentencing proceeding for the sole purpose of portraying the defendant as an extremely dangerous individual. The evidence of gun ownership was irrelevant to the issues at stake in that case and, given the context in which it was presented, was highly prejudicial. Because the jury was encouraged to draw adverse inferences from the defendant's exercise of a constitutional right, we reversed the sentence.

In the present case, the evidence of Hancock's ownership of a gun emerged during direct examination of Hancock's son, L, who was attempting to explain why he did not report the sexual abuse earlier. After L testified that he feared his father, the prosecutor asked whether his father had a gun and L said yes. The defense counsel immediately requested a side–bar conference after which this line of questioning stopped. Report of Proceedings, at 78–79. The Court of Appeals concluded that there was no connection between L's fear and his father's gun ownership and concluded that the evidence was "gratuitous and irrelevant." *Hancock,* at 681.

We disagree. It was important for the prosecution to explain why L had taken so long to report the alleged incidents to law enforcement officials. L testified that he was afraid to tell anyone because of a "subconscious fear" of his father, a fear that could well have been inspired by his father's ownership of a gun. We cannot tell from the record how strong this connection was, since the prosecution did not pursue this line of questioning after the side–bar conference and the defense counsel chose to ignore the point in cross examination. But given the context in which this evidence was introduced, it appears to be relevant to the issue of L's fear of his father. This fear was an important element of the prosecution's rebuttal of the defense argument that L's accusations were a recent fabrication made to get back at Hancock for recent disciplining.

Since Hancock's ownership of a gun was relevant in the

context in which it arose, and does not appear to have been introduced for any impermissible purpose, we find no error with the trial court's admission of this evidence.[5] The Court of Appeals holding to the contrary is reversed.

The conviction is affirmed.

PEARSON, C.J., and BRACHTENBACH, DOLLIVER, DORE, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., concur.

---

[5]To prevent relevant evidence from being used improperly by the jury, a limiting instruction is often appropriate. We note, however, that such an instruction was not requested here.