# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 70134-7-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| RICHARD D. PETERS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: August 4, 2014 |

2014 AUG -4 AM 10: 05
COURT OF APPEALS DIV I
STATE OF WASHINGTON
FILED

SPEARMAN, C.J. — Richard D. Peters was charged by amended information of first degree manslaughter after the accidental shooting death of his six-year-old daughter. The jury convicted him of the lesser included offense of second degree manslaughter. He challenges the conviction, arguing that the trial court improperly burdened his constitutional right to bear arms when it admitted evidence of guns and ammunition, which he owned and stored at the scene of the crime, but were not actually used in the shooting. He also argues that the trial court erred in admitting evidence of prior acts involving his unsafe storage and handling of firearms. We affirm.

## FACTS

On November 16, 2008, Richard Peters shot and killed his six-year-old daughter, Stormy. Peters had been at home that day, playing with his children

and watching television with them. Peters had also drank several vodka and Coke drinks throughout the day.

That evening, Peters' mother called and asked Peters to lend her a gun. When he got off the phone, Peters, who owned several guns, unlocked his gun safe and retrieved is Para-Ordnance .45 pistol to see if it would be suitable for his mother to use. Peters also sent Stormy upstairs to retrieve his Colt .45 pistol from his nightstand.

Stormy came downstairs with the pistol and handed it to her father. He took the gun from her and removed the magazine. He did not check to see if there was a bullet in the chamber, because he did not usually store the gun with a chambered bullet and the magazine appeared full. As Peters was handling the pistol, it fired, striking Stormy in the center of the forehead. The angle of the bullet was almost directly perpendicular to her forehead. Stormy died later that night in the hospital. Peters later told police officers that the gun had a "hair trigger."

When police arrived at Peters' home to investigate the shooting, they observed several guns lying in the open. The Colt .45 was lying on the couch. Another handgun was on the coffee table. Several more handguns, four assault rifles, and a shotgun were found in Peters' gun safe, which was located in the living room and remained open after the call from Peters' mother. The police took photographs of the crime scene, which depicted these weapons.

Police also observed an alcoholic beverage near the gun on the coffee table. Medics and police at the scene noted that Peters appeared to be intoxicated. When his blood was drawn at 2:50 a.m. the next morning, his blood-alcohol level was determined to be .11. Peters acknowledged to the investigating police officers that he felt under the influence of alcohol, but at trial, he testified that he had not been too intoxicated to handle a gun.

The State charged Peters with one count of second degree felony murder based on second degree assault. A jury acquitted Peters on the murder charge, but convicted him of the lesser included offense of first degree manslaughter. We reversed the conviction, citing an erroneous jury instruction.[1]

Peters was then retried for first degree manslaughter. At trial, the jury was shown the crime scene photographs, which depicted the guns observed by police investigating the shooting. They heard testimony that the police had executed a search warrant and seized a total of 16 guns from Peters' house.

The jury also heard testimony from Peters' friends, John Smith and George Wilson. Smith testified that on at least three occasions, he had observed Peters handle his guns while drinking. Smith also testified that about a month before Stormy was killed, he saw Peters reach under "a stack of newspapers, magazines, some dumped on the couch" and pull out a handgun. Verbatim Report of Proceedings (VRP) (Mar. 5, 2013) at 44. Upon inspection, Smith had found this gun to be loaded. That same day, Smith saw Peters ask his eight- or nine-year-old son to retrieve a gun, which happened to be unloaded, from Peters'

---

[1] State v. Peters, 163 Wn. App. 836, 848, 261 P.3d 199 (2011).

truck. Finally, Smith testified that on at least two occasions, he had warned Peters that the manner in which Peters' handled guns was unsafe.

Wilson gave testimony about an accidental shooting that occurred about two weeks before Stormy was killed. A group of people had gotten together that day to shoot pumpkins that farmers had left over from Halloween. Wilson testified that he saw Peters and another man holding a shotgun that they were trying to manipulate. The two men appeared to be trying to clear or chamber a shell when the shotgun accidentally discharged. Although no one was injured, Peters acknowledged having a "discussion" with the shooting range operators following this incident.

Peters was acquitted of first degree manslaughter but convicted of the lesser included offense of second degree manslaughter. He appeals.

## DISCUSSION

Peters contends that the trial court committed reversible error when it admitted evidence of guns and ammunition that he owned, other than the Colt .45 pistol involved in the shooting. A trial judge's evidentiary ruling will not be overturned absent a showing of abuse of discretion. An abuse of discretion occurs when a decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons. Mayer v. Sto Indus., Inc., 156 Wn.2d 677, 684, 132 P.3d 115 (2006). A discretionary decision rests on untenable grounds or is based on untenable reasons if the trial court relies on unsupported facts or applies the wrong legal standard. Id.

-4-

Peters argues that the trial court abused its discretion in admitting evidence of his ownership of guns because the evidence impermissibly penalized his constitutionally protected right to bear arms. We reject the argument because Washington courts recognize no such rule. Peters is correct that gun ownership is a constitutionally protected right. See CONST. art. 1, § 24. He is also correct that the State cannot use the fact of gun ownership to draw adverse inferences regarding a defendant's character. But whether the evidence is admissible at trial turns on the issue of relevance.[2] State v. Hancock, 109 Wn. 2d 760, 767, 748 P.2d 611 (1988) (distinguishing State v. Rupe, 101 Wn. 2d 664, 706-07, 683 P.2d 571 (1984)). Peters identifies no authority, and we are aware of none, that precludes the admission of such evidence where it is relevant to an issue at stake in the trial.

Relying on Rupe, 101 Wn. 2d at 686, Peters argues that the evidence of his ownership of several firearms and ammunition was irrelevant and unduly prejudicial. He maintains that evidence of the 16 guns, multiple gun magazines, and 12 boxes of ammunition found in his home was unrelated to the crime at issue—the accidental shooting of his six-year-old daughter. We disagree.

In Rupe, a defendant was charged and convicted of multiple counts of aggravated first degree murder and first degree robbery during the commission of which he was armed with a firearm. The State sought the death penalty.

---

[2] Evidence is relevant if it tends to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. ER 401. Generally, relevant evidence is admissible. ER 402.

During the sentencing phase of the trial, the State introduced evidence of the defendant's gun collection, which, admittedly, had not been used in the commission of the charged crimes.

The Supreme Court held that the admission of this evidence was error because it was irrelevant, as there was "no relation between the fact that someone collects guns and the issue of whether they deserve the death sentence." Id. at 708. The sole purpose of the evidence in that case was an impermissible one, to portray the defendant as an extremely dangerous individual. Id.

Here, the trial court reasoned that evidence of the guns and ammunition discovered in Peters' house was relevant and admissible to show "recklessness on behalf of [Peters] in his use of guns and his overall propensity to not maintain a safe environment within the home." VRP (Feb. 26, 2013) at 85. We agree. To prove that Peters committed the crime of manslaughter in the first degree, the State was required to show that Peters recklessly caused Stormy's death. RCW 9A.32.060. The jury was instructed, "A person is reckless or acts recklessly when he knows of and disregards a substantial risk that death may occur and this disregard is a gross deviation from conduct that a reasonable person would exercise in the same situation." Evidence of Peters' ownership of guns and the manner in which he used and stored them was relevant to prove that Peters had knowledge of a substantial risk that his actions may cause a death to occur and that he intentionally disregarded that risk. Thus, evidence of the guns and

ammunition discovered in Peters' home was admissible to prove an essential element of the crime.

Hancock is instructive. In that case, the evidence of the defendant's gun ownership was elicited from the alleged victim, who was explaining the basis for his delay in reporting the alleged crime—his fear of the defendant. "[T]he evidence of Hancock's ownership of a gun emerged during direct examination of Hancock's son, L, who was attempting to explain why he did not report the sexual abuse earlier. After L testified that he feared his father, the prosecutor asked whether his father had a gun and L said yes." Hancock, 109 Wn.2d at 768. The Supreme Court concluded that "given the context in which this evidence was introduced, it appears to be relevant to the issue of L's fear of his father. This fear was an important element of the prosecution's rebuttal of the defense argument that L's accusations were a recent fabrication made to get back at Hancock for recent disciplining." Id. Similarly, in this case, the evidence was admissible because it was relevant to an issue at stake in the trial. There was no error.

We also reject Peters' contention that this evidence was unduly prejudicial. ER 403 allows relevant evidence to be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." While we acknowledge the potential for irrelevant evidence of gun ownership to inflame and unfairly prejudice the jury, particularly in cases involving violent crimes, we find the rule inapplicable here. The evidence of Peters' gun ownership and, more specifically his manner of storing and handling the weapons, was directly probative of the recklessness

element of the crime. We agree with the trial court that the potential for prejudice in this case did not outweigh the probative value of the evidence.

Peters also challenges, under ER 404(b), the trial court's admission of his prior acts involving firearms. Specifically, he argues that the trial court erred when it admitted testimony from John Smith and George Wilson. This argument lacks merit.

ER 404(b) precludes the admission of evidence of prior crimes, wrongs, or acts for the purpose of proving a defendant's propensity to act in conformity therewith. However, such evidence may be admissible for other purposes, such as to establish the defendant's knowledge. ER 404(b). "To admit evidence of other crimes or wrongs under Washington law, the trial court must (1) identify the purpose for which the evidence is sought to be introduced, (2) determine whether the evidence is relevant to prove an element of the crime charged and (3) weigh the probative value of the evidence against its prejudicial effect." State v. Lough, 125 Wn.2d 847, 853, 889 P.2d 487 (1995).

As discussed previously, the charge of first degree manslaughter requires proof that person knows of and disregards a substantial risk that a death may occur. RCW 9A.32.060(1)(a). Peters, 163 Wn. App. at 848. Thus, a showing of recklessness requires proof of a defendant's knowledge. The State is entitled to introduce evidence of a defendant's prior acts in order to prove his reckless mental state. See State v. Potter, 31 Wn. App. 883, 885-86, 645 P.2d 60 (1982).

The testimony of John Smith and George Wilson regarding Peters' prior acts was probative of Peters' knowledge of the risk involved in his casual

handling and storage of the several guns he owned. Smith testified that on one occasion, Peters pointed a loaded gun at him. Shortly thereafter, Smith told Peters that he thought the way Peters handled weapons was unsafe. Smith also testified that the same day, he saw a loaded assault rifle propped against a wall in Peters' house. Again, Smith told Peters that his handling of weapons was unsafe and specifically criticized Peters for leaving the weapon where children could get to it. Smith also noted that the rifle was left in a place where Peters' children could get to it.

Wilson, who attended the pumpkin shoot with Peters, testified that two weeks before Stormy was killed, a shotgun was accidentally discharged while Peters was handling it. When asked about the incident, Peters testified that he had been unaware that the gun was loaded but had not checked to verify that.

Smith's testimony establishes that Peters had been expressly forewarned of the obvious risks associated with keeping unsecured guns in the reach of children and pointing guns at people whom he did not intend to kill. And Wilson's testimony establishes that Peters knew, by personal experience, that a carelessly handled gun can be unintentionally fired when its handler fails to verify that it is unloaded. The trial court did not err in concluding that their testimony was relevant.

Moreover, we agree with the trial court that the evidence was not "overly prejudicial." VRP (Feb. 26, 2013) at 86. As with the evidence of Peters'

ownership of guns, the evidence of Peters' prior acts was directly probative of the recklessness element of the crime charged. The potential for prejudice in this case did not outweigh the probative value of the evidence.

Affirm.

WE CONCUR:

_Spearman, C.J._

_Trickey, J_

_Appelwick, J_