# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 48227-4-II |
| Respondent, | |
| v. | |
| RITA E. MADRIGAL, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. – Rita E. Madrigal appeals her second degree assault—domestic violence conviction, alleging she was denied effective assistance of counsel. She also alleges the legal financial obligations (LFOs) imposed at her sentencing should be stricken because the sentencing court failed to inquire into her ability to pay. We affirm.

### FACTS

On June 22, 2015, Corporal Timothy Ripp and Sergeant Trevor Severance of the Mason County Sheriff's Office responded to Otiel Pena's residence following reports of a disturbance with a female who was possibly armed with a knife. Once at the residence, they spoke with Pena, who told them that he and his girlfriend, Madrigal, got into an argument. Severance observed injuries on Pena's arm.

While at the residence, Ripp filled out a victim statement with Pena. Ripp asked Pena several questions about the incident, Pena responded, and Ripp wrote down Pena's responses. Pena does not write English, but Ripp believed Pena was able to read what Ripp wrote because Pena looked over each statement and initialed each response.

The State charged Madrigal with second degree assault. During trial, Pena testified that he recently suffered a head injury and had "a hard time remembering a few—stuff." Report of Proceedings (RP) at 28. When asked whether there was a problem between Pena and Madrigal on the day in question, Pena responded, "I think so" and then stated, "I'm not going to be able to answer any of that." RP at 28. The State then requested to admit "State's Exhibit No. 6." RP at 28-29. The trial court's exhibit list shows that "State's Exhibit No. 6" is Pena's "Statement." Clerk's Papers (CP) at 70.

The State moved to admit the victim statement under ER 803 as a prior recollection recorded. Defense counsel objected, and the trial court held a side bar with both counsel. After the side bar concluded, the State handed the victim statement to Pena and went through each statement with Pena on the record.

Referring to the victim statement, the prosecutor read the question, "[H]ave you been assaulted?" RP at 32. He then read Pena's answer, which was "[Y]es." RP at 32. Pena testified this was "Correct." RP at 32. Next, the prosecutor read to Pena the statement that said he was cut. (RP 33) Pena answered, "Yes." RP at 33.

Later in the trial, the trial court stated, "We need to address on the record the side bar which occurred during the last segment." RP at 61. The trial court noted that the initial admission of the victim statement "was objected to" and that the State was going to do further research before

2

requesting to admit the victim statement. RP at 61. The trial court also noted that instead of ER 803, the colloquy between the prosecutor and defense counsel was "more in the lines of impeachment." RP at 61. The prosecutor then stated, "I believe the issue is going to be moot tomorrow because I think Corporal Ripp's going to be able to authenticate the [victim statement] as a [*Smith*] affidavit and it's going to come in that way." RP at 62. The trial court respond, "Well at this point we'll just deal with it when—if it's offered." RP at 62. The State did not renew its motion to admit the victim statement, and the trial court's exhibit list does not show that the victim statement was admitted.

The State also called Madrigal and Pena's seven-year-old son, N.P., as a witness. N.P. testified that he saw his parents get into an argument. He also saw his mother pick up at hammer and was "[a]bout to bang" his dad, but then grabbed "a knife and—or saw, and then like cut him" on the right arm. RP at 47-48.

During closing arguments, the State argued, without objection, that "Mr. Pena claimed that he had no memory of what happened. But frankly it's absurd. . . . So we had to go through the affidavit that he filled out at the time. And we talked about what was in that during the testimony. We went through it. He said yes, he'd been assaulted by being cut with a knife and a saw." RP at 105.

The jury found Madrigal guilty as charged. At sentencing, the sentencing court asked, "I need to inquire as to Ms. Madrigal's ability to pay. Does she have anything that prevents her from earning an income?" RP at 137. Defense counsel responded, "She's not currently employed, your Honor. She does earn child support and is trying to essentially single parent a couple of children . . . so there is at least some limitation on her ability to pay. It's not a physical or mental disability."

RP at 138. Without objection, the sentencing court imposed $1,902 in LFOs broken down as follows: $500 for victim assessment, $100 for domestic violence assessment, $602 in court costs, $600 for a court-appointed attorney, and $100 for DNA collection. Madrigal appeals.

ANALYSIS

A.    INEFFECTIVE ASSISTANCE OF COUNSEL

Madrigal contends that defense counsel provided ineffective assistance because counsel failed to object when the prosecutor questioned Pena about his answers on the victim statement and when the prosecutor referenced the victim statement during closing arguments. Madrigal argues the State used impeachment as a guise for submitting otherwise inadmissible substantive evidence. We disagree.

1.  Legal Principles

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). A defendant receives ineffective assistance if the attorney's conduct (1) falls below a minimum objective standard of reasonable attorney conduct, and (2) prejudiced the defendant, i.e., there is a reasonable probability the attorney's conduct affected the case's outcome. *State v. Benn*, 120 Wn.2d 631, 663, 845 P.2d 289, *cert. denied*, 510 U.S. 944 (1993). "A defendant must *affirmatively prove prejudice*, not simply show that 'the errors had some conceivable effect on the outcome.'" *State v. Crawford*, 159 Wn.2d 86, 99, 147 P.3d 1288 (2006) (quoting *Strickland*, 466 U.S. at 693).

"There is a strong presumption that counsel has rendered adequate assistance and has made all significant decisions in the exercise of reasonable professional judgment." *Benn*, 120 Wn.2d

at 665. A defendant cannot claim ineffective assistance if defense counsel's trial conduct can be characterized as legitimate trial strategy or tactic. *Id*. (quoting *State v. Lord*, 117 Wn.2d 829, 883, 822 P.2d 177 (1991), *cert. denied*, 506 U.S. 856 (1992)). "The decision whether to object is a classic example of trial tactics, and only in egregious circumstances will the failure to object constitute ineffective assistance of counsel." *State v. Kolesnik*, 146 Wn. App. 790, 801, 192 P.3d 937 (2008), *review denied*, 165 Wn.2d 1050 (2009).

ER 607 states that the credibility of a witness may be attacked by any party, including the party calling the witness. Although the State may impeach its own witness, it may not call a witness for the primary purpose of eliciting testimony in order to impeach the witness with testimony that would be otherwise inadmissible. *State v. Barber*, 38 Wn. App. 758, 770-71, 689 P.2d 1099 (1984). The underlying concern is that prosecutors may abuse the rule by calling a witness they know will not provide useful evidence for the primary purpose of introducing hearsay evidence against the defendant. *State v. Hancock*, 109 Wn.2d 760, 763, 748 P.2d 611 (1988). This tactic seeks to exploit a jury's difficulty in making the subtle distinction between impeachment evidence and substantive evidence. *Id.* The motivation in such instances is less to impeach the witness than to introduce hearsay as substantive evidence, contrary to ER 802—the rule against hearsay. *Id*.

When distinguishing between permissible impeachment testimony and impermissible testimony elicited under the guise of impeachment, courts ask whether the State called the witness for the primary purpose of impeaching him or her with otherwise inadmissible testimony. *State v. Lavaris*, 106 Wn.2d 340, 345, 721 P.2d 515 (1986) (citing *United States v. DeLillo*, 620 F.2d 939, 946 (2d Cir. 1980)). The State's primary purpose is not to impeach a witness with inadmissible

evidence when the impeachment testimony corroborated elements essential to the State's case, when the testimony provided important circumstantial evidence of the events leading up to the case, and where nothing in the record indicates that there was a reason to anticipate that the witness would not testify consistently with his or her earlier statements. *Hancock*, 109 Wn.2d at 764.

In *Hancock*, Roberta Hancock, the wife of a defendant accused of indecent liberties with his nephew and incest and rape of his son, testified for the State. 109 Wn.2d at 761. On direct examination, she denied suspecting anything improper between her husband and the children, and denied that he had ever told her of any improper conduct. *Id*. After Roberta's direct-examination, the State called a detective to testify. *Id*. The detective testified about the out-of-court statements Roberta had previously made to him. *Id.* The detective testified that shortly after her husband's arrest, Roberta told him that she had suspected something was going on between her husband and one of the children, that her husband told her what he had done to the other child, and that she was afraid of him. *Id*. at 761-62. Hancock was convicted. *Id*. at 762.

On appeal, Hancock argued that the prosecutor knew that Roberta would not testify favorably for the State and that the primary purpose in calling her as a witness was mere subterfuge to admit her prior inconsistent statements under the guise of impeachment. *Id*. at 762. The court concluded that, because Roberta provided testimony which affirmatively supported the defense— not just flat denials of making any statements to police investigators—the subsequent impeachment of her testimony was proper to rebut her testimony supporting the defense and to impeach her credibility. *Id.* at 765, 767. The *Hancock* court further reasoned that the State was entitled to expect Roberta to testify under oath no differently from the apparently voluntary statement she gave to the detective. *Id*. at 765.

2. No Deficient Representation

Like in *Hancock*, the State did not offer Pena's testimony with the primary purpose of impeaching him with otherwise inadmissible evidence. Also like in *Hancock*, the State was entitled to expect Pena to testify under oath no differently from the apparently voluntary statement he had provided to Ripp. 109 Wn.2d at 765. But Pena testified he suffered a recent brain injury and had trouble recalling past events. He did not deny the assault. Without a denial of the events, there was nothing to impeach. Therefore, the State did not attempt to enter impermissible testimony under the guise of impeachment. Defense counsel did not provide deficient representation by failing to object to either the prosecutor's questions or closing remarks regarding the victim statement because the State did not use impeachment as a guise for eliciting otherwise inadmissible testimony. Thus, without a showing of deficient performance, Madrigal's ineffective assistance of counsel claim fails. *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996). Madrigal received effective assistance of counsel.

B.      LFOs

Madrigal argues that the sentencing court erred by imposing LFOs without considering Madrigal's current or future ability to pay as required under RCW 10.01.160(3). She does not distinguish between mandatory LFOs, for which the sentencing court need not consider the defendant's ability to pay, and discretionary LFOs, which are subject to the requirements of RCW 10.01.160(3). *See State v. Lundy*, 176 Wn. App. 96, 102, 308 P.3d 755 (2013). Nevertheless, the State argues this issue was not preserved for appeal.

In March 2015, seven months before Madrigal was sentenced, the Washington Supreme Court decided *State v. Blazina*, 182 Wn.2d 827, 344 P.3d 680 (2015), which made clear that under RCW 10.01.160(3), a sentencing court must make an individualized inquiry on the record into the defendant's present and future ability to pay LFOs. *Blazina,* 182 Wn.2d at 838. Citing *Blazina*, Madrigal contends for the first time on appeal that the sentencing court violated RCW 10.01.160(3) because it ordered her to pay LFOs without considering her current or future ability to pay.

Madrigal did not challenge the LFOs or the sufficiency of the individualized inquiry at her sentencing.[1] Madrigal failed to raise her challenges to the inquiry into ability to pay even after *Blazina* made clear she had these challenges. Appellate courts retain discretion to consider challenges to LFOs raised for the first time on appeal. *Blazina*, 182 Wn.2d at 832-33. In these circumstances, we exercise our discretion to decline review Madrigal's unpreserved challenge.[2]

---

[1] We note that the sentencing court did engage in some individualized inquiry.

[2] Madrigal also claims the sentencing court's imposition of LFOs violated her rights to equal protection under the state and federal constitutions. This same argument has been rejected in *State v. Mathers*, 193 Wn. App. 913, 926, 376 P.3d 1163.

No. 48227-4-II

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Lee, J.

We concur:

_____
Johanson, J.

_____
Bjorgen, C.J.