# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 53433-9-II |
| Respondent, | |
| v. | |
| DANIEL PAUL BAKKER, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — Daniel Bakker appeals his conviction for two counts of fourth degree assault and one count of harassment. Bakker argues that the trial court erred when it ruled that the State's proffered testimony that Bakker owned a gun and that the gun was in his bedroom during an alcohol-fueled, violent altercation with his girlfriend, was not within the scope of ER 404(b).[1] Bakker further argues that the trial court erred when it ruled that the danger of unfair prejudice did not substantially outweigh the probative value of such evidence under ER 403. Because the trial court did not abuse its discretion in determining that the evidence was not barred by either ER 404(b) or ER 403, we affirm Bakker's convictions.

## FACTS

### I. THE CRIME

On the evening of March 24, 2018, Daniel Bakker got into a dispute with his girlfriend, Kaela Pardo, at their home. Zachary Quisenberry, Bakker's friend was also present at the home.

---

[1] ER 404(b) limits evidence of other crimes, wrongs, or acts to prove the character of a person in order to show they acted in conformity therewith.

Bakker was intoxicated. During the course of the evening, Bakker, Pardo, and Quisenberry were involved in various altercations and arguments, which included Bakker physically grabbing Pardo on multiple instances and charging into Quisenberry and injuring his knee. Bakker also threatened to "beat the s**t" out of Pardo with a stick, and told her that "if she didn't start cooking dinner, he would "knock her upside the head." Verbatim Report of Proceedings (VRP) at 226, 232. Bakker was so intoxicated that Quisenberry and Pardo had to physically restrain him to prevent him from driving away.

Bakker fought with Quisenberry while they ate dinner, causing Pardo to remove steak knives set on the table, fearing that they would be "a threat." VRP at 318. Bakker put Quisenberry into a headlock and Pardo had to intervene to prevent Quisenberry from passing out. After dinner, Bakker and Pardo got into a physical altercation again when Pardo refused to let Bakker into the bedroom. Bakker grabbed Pardo by the arm, physically moved her from the doorway, and pinned her up against the wall. Quisenberry yelled at Bakker to stop and to take his hands off of Pardo. Bakker turned and charged at Quisenberry, striking his knee and causing a serious injury that would require medical attention. Pardo and Quisenberry both left the house.

The State charged Bakker with second degree assault,[2] fourth degree assault—domestic violence,[3] harassment—domestic violence.[4] The State later added a charge of bail jumping[5] for Bakker's failure to appear at a November 1, 2018 hearing.

---

[2] RCW 9A.36.021(1)(a).

[3] RCW 9A.36.041(1), (2).

[4] RCW 9A.36.041(4).

[5] RCW 9A.76.170(3)(c).

## II. TRIAL

At trial before opening statements, the trial court heard arguments on motions in limine. Bakker moved to suppress Pardo's testimony about any prior abuse or assault, and about weapons, specifically removing the knives from the kitchen table during the altercation. The State objected, arguing that evidence of prior physical violence by Bakker was necessary to establish the necessary element of Pardo's reasonable fear to prove the charge of harassment. At that time, the State said that it did not intend to elicit testimony that Bakker possessed a gun which was in the house the night of the incident, but sought to admit evidence regarding the steak knives. The State also said that it would not be seeking to introduce 404(b) evidence. The Court stated that it would address the possibility of 404(b) evidence at a later time.[6]

Trial proceeded and witnesses testified to the facts described above. Specifically, Pardo testified that Bakker made threats throughout that evening to beat her. Pardo also testified that Bakker's threats made her feel unsafe, and that she believed they were real. During her direct examination, the State interrupted Pardo and asked the court for a short recess, which was granted.

During that recess, the State asked the court to resolve the disputed evidentiary issues with Pardo's potential testimony discussed during pretrial. The State changed its position from the pretrial arguments, and said it now would like to elicit limited testimony from Pardo about Pardo's knowledge and awareness of Bakker's gun in the bedroom as evidence of her reasonable

---

[6] The trial transcript refers to a defense motions in limine memorandum, but this document is not part of the record on appeal.

fear of Bakker, but that it did not plan to elicit any testimony about any prior incident involving the gun. The State argued that this evidence was necessary to provide context to the jury as to why Pardo tried to prevent Bakker's access to the bedroom. The State argued that the purpose of the gun testimony would be the same as for Pardo's testimony she gave about removing the knives from the kitchen during the altercation as evidence of her reasonable fear of Bakker. The State argued that there was no need for a hearing on ER 404 because evidence that Bakker had a gun in the bedroom was not evidence of a prior bad act or "that he's a bad person or something that would lead to that inference." VRP at 325.

Referring to Bakker's memorandum, the court clarified on the record what exactly Bakker was objecting to:

| The Court: | . . . . |
|---|---|
| | [Defense counsel], do you understand the testimony that you are objecting to is this witness testifying as to her knowledge that there would be a firearm and that Mr. Bakker owns a firearm? Is that your understanding? |
| Defense counsel: | I think that is—yes. And that she was concerned that if he had access to it, something bad would happen. |
| The Court: | So I just want to be clear about the testimony that we're talking about. I think the parties are agreed that that is the substance of the testimony that is the subject of the contested motion. |
| Defense counsel: | That's right. Yeah. |

VRP at 325-26.

Bakker argued that the testimony about the gun would be cumulative because Quisenberry had already testified that Bakker had physically assaulted her and that she looked afraid. Bakker argued against a "need to go into potential 404(b) stuff or invite speculation by

the jury that there had ever been an event involving a firearm in the past or inviting the jury to speculate that because there was a gun in the house, that she was at risk by this firearm." VRP at 327. Bakker argued that eliciting testimony about the firearm would be "an end run around for 404(b) potential . . . if she comes in and testifies there was some prior incident with the gun." VRP at 327.

The court again interjected to clarify the nature of Bakker's objection:

| The Court: | Agreed. But that's not what we're talking about, right? What we're talking about is her knowledge that he owns a gun and that, presumably, it was in the residence somewhere. |
|---|---|
| Defense Counsel: | That's correct, Your Honor, and my concern is the speculation that that invites by the jury. |
| The Court: | Would you agree that that evidence would be relevant? |
| Defense Counsel: | Yes, marginally relevant, in that it goes to, potentially, her state of mind as far as the harassment allegation goes. But I don't think we could get to it, because I think under [ER] 403, I think it's more prejudicial than probative. But I think there's simply enough facts to get to reasonable fear or apprehension without anything outside of what she's already testified to. |

VRP at 327-28.

The court ruled that the proffered evidence was not covered under ER 404(b) stating:

The court considers this issue of the proposed testimony of Ms. Pardo that Mr. Bakker owns a firearm and that that firearm, at least to her knowledge, was at the residence, and the court's analysis is under 401 and 403. I don't consider this to be a 404(b) issue because under no circumstances is the court allowing Ms. Pardo to testify about any prior use of the firearm or any prior improper use of the firearm.

VRP at 328-29.

The court also ruled that the testimony about the gun in the bedroom would be admissible as relevant evidence under ER 402:

My understanding is the only question is about her testimony as to his ownership and possession of a firearm, and the court believes that that evidence is relevant in this case and that it goes to Ms. Pardo's fear or concern she had. And while it's true that there may be other evidence of that as well, I don't think the fact that there's other evidence of it necessarily limits the State to not be able to put on evidence that is relevant.

And so it certainly goes to an element of at least one of the counts in this case, and it is relevant.

VRP at 329.[7]

The court then performed an ER 403 analysis. The trial court explained that evidence that there was a gun or Pardo's knowledge of a gun "has some prejudice," but that the probative value outweighed that prejudice. VRP at 329.

The court again clarified that it was ruling only on the proffered testimony as being non-404(b) evidence, and it explained that its ruling applied only insofar as Pardo's testimony did not exceed that limitation:

In other words, the prejudice here is in the ownership and possession of a firearm is not as great as it would be if there were some testimony that it was used in a particular way or some more specific evidence as to Mr. Bakker's use of the firearm. It does go to that state of mind. And so the court is allowing that limited testimony in this case so that Ms. Pardo can explain her state of mind as it . . . goes to at least one of the counts. But no further than as I've described. Simply her understanding of the ownership and possession of it. And I'm not requiring that that testimony be elicited. I'm only allowing it if the question is otherwise proper.

VRP at 329-30.

The jury returned, and direct examination of Pardo resumed. Pardo testified about the gun:

---

[7] ER 402 provides: "All relevant evidence is admissible, except as limited by constitutional requirements or as otherwise provided by statute, by these rules, or by other rules or regulations applicable in the courts of this state. Evidence which is not relevant is not admissible."

A:     Well, he had [Quisenberry] in a headlock, as I stated before. And I had 911 dialed. I didn't want to call 911. I had many reasons for that. There was a gun in the house, and that is one of the biggest reasons. What if the police were to show up and they could potentially arrest me, or nothing happened at all, and then I would be left in the house with somebody who had already been threatening to hurt me and beat me, and who I had just watched hurt their friend, their very good friend, and that he would have access to that gun.

Q:     And did you—were you aware of where the gun was?

A:     It was in the bedroom.

Q:     Do you know who that gun belonged to?

A:     It was the family's gun. [Bakker] brought it home from their home one day.

VRP at 331-32.

Pardo testified that she tried to keep Bakker out of the bedroom in an effort to prevent Bakker's access to that gun. Pardo testified that Bakker was very angry and very aggressive. Pardo testified that Bakker grabbed her and the two had a physical altercation at the doorway to the bedroom, and that Quisenberry intervened while she gathered her belongings to leave the house. Pardo testified about her fear of Bakker gaining access to the bedroom:

You know, I tried as best I could to keep my demeanor calm and tried to calm him while still keeping him away from gun access, and I tried to keep him—and keep him out of the bedroom throughout the evening and remove any potential access to anything that could be used in a violent manner.

VRP at 334.

Bakker did not object to any of the testimony about the gun during the trial. Bakker cross-examined Pardo about the gun. Pardo testified that the gun was stored in the bedroom closet, inside of a locked box. Pardo also testified that Bakker did not mention anything about the gun during the night in question. On redirect examination, Pardo again testified that she did not want Bakker entering the bedroom because the gun was in there.

7

In closing arguments, Bakker discussed the gun evidence:

> Now, she has this story she didn't want him to go in there because there was a gun. She testified she never saw the gun, there was no mention of the gun, the gun was locked up in the closet. She was in the bedroom. She had the opportunity—if she was concerned at that time, she could have removed the gun, she could have hidden the gun, thrown the gun out the window. She could have done anything with the gun. The gun was not the concern.
>
> The gun is a complete canard. It's something that she trotted out there in trial to look at and say, "Ooh, gun. Bad guy, scary guy." Obviously at the time of these events, there wasn't an issue, because she had control over that.
>
> It wasn't until later where she said, gosh, you know what, I didn't have a good reason for physically stopping him from getting into the room.

VRP at 711-12.

The jury found Bakker not guilty on the charge of second degree assault, but found him guilty of the lesser-included charge of fourth degree assault of Quisenberry and also found him guilty of fourth degree assault of Pardo, harassment, and bail jumping.

Bakker appeals his convictions for assault and harassment.[8]

## ANALYSIS

Bakker argues the trial court abused its discretion in two ways by admitting evidence that Bakker owned a gun. First, Bakker argues that the trial court erred when it concluded that Pardo's testimony that Bakker had a gun in the bedroom was not covered under ER 404(b). Bakker argues that we should review this issue de novo. Second, Bakker argues that the trial court erred when it ruled that the potential prejudice of the gun evidence did not outweigh the potential probative value under ER 403.

---

[8] Bakker's notice of appeal challenges all his convictions, but his brief addresses only his second degree assault conviction.

The State argues that Bakker failed to first raise a claim of error on the basis of ER 404(b) at the trial court level, and is thus barred from review under RAP 2.5(a). The State alternatively argues that any such error under ER 404(b) was harmless because the evidence would have been admitted. The State also argues that the trial court did not err when it ruled that the potential prejudice of the gun evidence did not outweigh the potential probative value under an ER 403 balancing test.

We hold that the trial court did not err when it ruled that evidence of Bakker's gun ownership, without being offered as character evidence, was not within the scope of ER 404(b). Additionally, we hold that the trial court did not abuse its discretion when it ruled that the potential prejudice of the gun evidence did not outweigh the potential probative value under ER 403. Accordingly, we affirm Bakker's conviction.

## I. OTHER CRIMES, WRONGS, OR ACTS

A.      *RAP 2.5(a)(3)*

As an initial matter, the State argues that Bakker's ER 404(b) argument is being raised for the first time on appeal and should not be considered under RAP 2.5(a). Bakker does not address RAP 2.5 in his brief. Instead, he argues that the trial court permitted Pardo's testimony about the gun "over defense objection." Br. of Appellant at 23. We hold that Bakker sufficiently preserved the ER 404(b) issue for review.

Ordinarily, we do not consider unpreserved errors raised for the first time on review. *State v. A.M.*, 194 Wn.2d 33, 38, 448 P.3d 35 (2019). Our refusal to review unpreserved errors "encourages parties to make timely objections, gives the trial judge an opportunity to address an

issue before it becomes an error on appeal, and promotes the important policies of economy and finality." *State v. Kalebaugh*, 183 Wn.2d 578, 583, 355 P.3d 253 (2015).

On appeal, Bakker argues that the trial court erred in permitting Pardo's limited testimony about her knowledge of the gun in the bedroom under ER 404(b). In the trial court, Bakker objected, based on ER 404(b), to the proffered testimony that Pardo knew Bakker possessed a gun and that gun was in the bedroom. Bakker specifically argued that allowing Pardo's proffered testimony invited the jury to speculate that Bakker had prior misconduct involving the firearm and would be an "end run" around ER 404(b), which sufficiently articulated that he was objecting to this evidence as character evidence under ER 404(b). VRP at 327. Thus, we review the merits of Bakker's argument.

B.      *Merits of 404(b) Ruling*

The trial court allowed the State to introduce evidence that Bakker owned a gun. The trial court stated that ER 404(b) applied only to "any prior use of the firearm or any prior improper use of the firearm." VRP at 329. Bakker argues that the trial court erred when it concluded that ER 404(b) does not cover gun ownership because gun ownership itself is prejudicial. The State argues that its proffered testimony was not covered by ER 404(b) because it was not offered to prove Bakker's character in order to show action in conformity therewith. We hold that the trial court did not err because the evidence was not offered to prove conformity therewith.

ER 404(b) provides, "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan,

10

knowledge, identity, or absence of mistake or accident." The rule does not define the term "acts," but historically, the rule has been interpreted to include "'acts that are merely unpopular or disgraceful.'" *State v. Halstien*, 122 Wn.2d 109, 126, 857 P.2d 270 (1993) (quoting 5 KARL B. TEGLAND, WASHINGTON PRACTICE, EVIDENCE LAW AND PRACTICE § 114, at 383-84 (3d ed. 1989)).

We review a trial court's interpretation of an evidentiary rule de novo as a question of law. *State v. DeVincentis*, 150 Wn.2d 11, 17, 74 P.3d 119 (2003). "Court rules are interpreted in the same manner as statutes. If the rule's meaning is plain on its face, we must give effect to that meaning as an expression of the drafter's intent." *Jafar v. Webb*, 177 Wn.2d 520, 526, 303 P.3d 1042 (2013).

Evidence of other crimes, wrongs, or acts are inadmissible to prove the character of a person or to show that a person acted in conformity with that character. ER 404(b). A trial court must always begin with the assumption that such evidence is inadmissible. *State v. DeVincentis*, 150 Wn.2d 11 at 17. Such evidence, however, can be admitted for other limited purposes, including intent, knowledge, or absence of mistake. ER 404(b). Before a trial court admits evidence covered by ER 404(b), it must (1) find by a preponderance of the evidence that the misconduct occurred, (2) identify the purpose for which the evidence is sought to be introduced, (3) determine whether the evidence is relevant to prove an element of the crime charged, and (4) weigh the probative value against the prejudicial effect. *State v. Gresham*, 173 Wn.2d 405, 421, 269 P.3d 207 (2012). The third and fourth elements ensure compliance with ER 402 and ER 403, respectively. *Gresham*, 173 Wn.2d at 421. The four pronged ER 404(b) analysis must be performed on the record. *State v. Olsen*, 175 Wn. App. 269, 281, 309 P.3d 518 (2013).

Here, Bakker's lawful ownership of a gun may not rise to the level of "misconduct," but such ownership is certainly an "act" which the jury could find was unpopular, and this act was relevant to prove Pardo's reasonable fear that Bakker's threats would be carried out. As such, the act of owning a gun potentially falls within ER 404(b). However, because the evidence was not offered to "show action in conformity therewith," ER 404(b) did not operate to exclude the gun evidence.

Relying on *State v. Everybodytalksabout*,[9] and *State v. Foxhoven*,[10] Bakker argues that his lawful ownership of a gun in the home is an "other crime, wrong[], or act" under ER 404(b). Br. of App. at 38. However, because the evidence in the instant case was not offered as character evidence, neither of these cases supports Bakker's argument here. Bakker also argues that *State v. Rupe*[11] supports the proposition that the trial court violated his constitutional rights by allowing the State to offer his lawful ownership of a gun as character evidence, but this argument also fails for the same reason.

---

[9] 145 Wn.2d 345, 39 P.3d 294 (2002) (holding that past leadership, though not misconduct, unpopular or disgraceful, could fall within ER 404(b) if offered as character evidence to prove conformity therewith).

[10] 161 Wn.2d 168, 163 P.3d 786 (2007) (holding that pictures and drawings of graffiti, though not graffiti themselves, were still covered by ER 404(b) if offered as character evidence to prove conformity therewith.).

[11] 101 Wn.2d 664, 703, 683 P.2d 571 (1984) (reversing a death sentence where a defendant's ownership of a gun collection was used as evidence to support an aggravating factor, reasoning that it was a violation of due process to draw an adverse inference from a defendant's exercise of a constitutional right); *C.f. State v. Hancock*, 109 Wn.2d 760, 766, 748 P.2d 611 (1988) (clarifying that *Rupe* only applied when the adverse inference was irrelevant).

Accordingly, we hold that the trial court did not err when it ruled that the proffered testimony was not within the scope of ER 404(b).

## II. RULE 403

Bakker argues that the trial court erred when it ruled that the danger of unfair prejudice did not substantially outweigh the probative value of the gun evidence. Specifically, Bakker argues that lawful gun ownership is inherently prejudicial to a jury, and that such evidence was unnecessary and cumulative to prove Pardo's reasonable fear. The State argues that the trial court properly balanced the potential for unfair prejudice against the probative value, and this is evidenced by the trial court limiting the testimony of Pardo to prevent her from mentioning any prior conduct involving the gun. We hold that the trial court did not abuse its discretion when it determined that the danger of unfair prejudice did not substantially outweigh the probative value of the gun evidence.

A.      *Legal Principles and Standard of Review*

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." ER 403. Evidence is unfairly prejudicial when it is more likely to create an emotional, impassioned response from a jury than a rational decision. *City of Auburn v. Hedlund*, 165 Wn.2d 645, 648, 201 P.3d 315 (2009). Unfair prejudice also arises when evidence elicits erroneous inferences undermining the goal of the rules to promote accurate fact finding and fairness. *Hedlund*, 165 Wn.2d at 648.

The trial court has wide discretion when balancing the probative value of evidence against the potential prejudicial affect. *State v. Bajardi*, 3 Wn. App.2d 726, 730, 418 P.3d 164 (2018). We review a trial court's decision to admit evidence for an abuse of discretion. *State v. Lord*, 161 Wn.2d 276, 294, 165 P.3d 1251 (2007). A trial court abuses its discretion when its decision is manifestly unreasonable or when it reaches its decision based on untenable grounds or untenable reasons. *State v. Ramirez*, 7 Wn. App.2d 277, 286, 432 P.3d 454 (2019), *review denied*, 193 Wn.2d 1025 (2019); *Lord*, 161 Wn.2d at 283.

Bakker's argument that lawful gun ownership is inherently prejudicial is premised upon the conclusion that being a gun owner is inherently a prejudicial activity. Even if lawful gun ownership were inherently prejudicial, this evidence would still be admissible unless its prejudice substantially outweighed its probative value. Here, the fact that Pardo knew there was a gun in the bedroom was highly probative and necessary for a jury to understand why she so desperately tried to keep Bakker out of the bedroom. Bakker was exhibiting an alcohol-fueled rage that night, and a major source of his aggression was from Pardo blocking his entry into the bedroom. A jury would need to understand Pardo's state of mind to judge whether or not her fear of Bakker was reasonable, including whether she had good reason to fear letting him into the bedroom.

The fact that Bakker did not make any overt threats about using a gun against Pardo does not mean the trial court abused its discretion. It would not be manifestly unreasonable, based on untenable grounds, or on untenable reasons for the trial court to determine that the lack of this specific threat did not necessarily mean the evidence had unfair prejudice that substantially outweighed its probative value. Pardo explained that she was afraid of Bakker's access to the

14

No. 53433-9-II

gun based on his overall aggressive conduct and threatening behavior that evening. We hold that the trial court did not abuse its discretion when it ruled that the danger of unfair prejudice did not substantially outweigh the probative value of the gun evidence.

CONCLUSION

In conclusion, Bakker's claim of error regarding the trial court's ruling on ER 404(b) was properly preserved for our review, but we hold that the trial court did not err. Further, the trial court did not abuse its discretion when it ruled that the danger of unfair prejudice did not substantially outweigh the probative value of the gun evidence. We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, J.

We concur:

_____
Lee, C.J.

_____
Glasgow, J.

15